## MARY C. WOODS V. DANIEL P. WEST.

FILED JUNE 30, 1893.    No. 4181.

**Ejectment:** BOUNDARIES: ESTABLISHMENT OF LOST CORNERS.
The question involved was the location of a government corner
when the original corner had been tampered with, and there were
three points alleged to be the true corner.   There being no one
to identify positively any point as the correct corner established
by the government, *held,* that surveys from known government
corners both north and south and east and west of the corner in
dispute, by which it was located on a line with other corners on
both of said lines, and each land-owner would thereby be given
the full amount of land called for by his patent, would be pre-
ferred to a survey which was not begun at a known government
corner and lacked many of the elements of certainty, and which
gave one of the land-owners much more than he was entitled to
under his patent, and the other less.

T. 1 N., R. 21 West, of 6th Pr. Mer.

PLAT OF D. S. HASTY.

Length of Woods' east line by Hasty's survey, 20 chains; by Phoebus' survey, 17-60.

ERROR from the district court of Furnas county. Tried below before COCHRAN, J.

*L. W. Colby, J. P. Lindsay,* and *Pemberton & Bush,* for plaintiff in error.

*McClure & Anderson, John T. McClure,* and *W. S. Morlan, contra.*

MAXWELL, CH. J.

This is an action of ejectment brought by the defendant in error against the plaintiff in error to recover the possession of about ten acres of land. There is an evident mistake in the description in the petition, and on the trial the parties stipulated as follows:

"It is hereby stipulated by and between the parties plaintiff and defendant in this action that the title to the southeast quarter of section 8, town 1, range 21, is in the plaintiff Daniel P. West, and that the north half of the northeast quarter of section 17, town 1, range 21, is in the defendant Mary C. Woods. That if the jury find the original government corner to be at the corner known as 'The Phœbus Corner,' that they shall find for the plaintiff; if they find that the corner is at or near the corner known as 'The Hasty Corner or Worthington Corner,' they shall then find for the defendant; and that if they find for the plaintiff, the amount of the damages shall be one dollar."

The right of the defendant in error to the land in question rests upon the accuracy of a survey made by one Phœbus, and of the plaintiff in error on the surveys of Hasty and Worthington. Phœbus, on cross-examination, testifies as follows:

Q. You say you surveyed to this corner three times only?

A. Yes, sir.

29

Q. What were you surveying the first time.

A. Section 4.

Q. You run a line from the southwest corner of section 4 to this corner in dispute at that time, did you?

A. Yes, sir.

Q. Survey any part of section 8 or 9 at that time?

A. Not until after I was done with section 4.

Q. For what purpose did you run the line between sections 8 and 9 to the corner in dispute?

A. At the corner of 4, 5, 8, and 9 there were two corners. I run a mile north and a mile south to determine which was the correct corner.

Q. Did you locate the corner at that time—at the corner of 4, 5, 8, and 9?

A. I did not.

Q. Did you locate one of these corners as the correct corner?

A. Yes, sir; I took the south corner as being the correct corner.

Q. How far from this corner of 4, 5, 8, and 9 is this south corner of 4, 5, 8, and 9 to the corner in dispute, the one you recognized as the government corner?

A. I haven't the first measurement, but I afterwards measured it on the survey of section 9.

Q. What was the distance at that time, if you recollect?

A. Eighty-one chains and thirty-one links.

Q. How far was the corner you recognized to 4, 5, 8, and 9 south of the corner marked there?

A. About four chains.

Q. You had started at the north one of these two corners and run south the distance that you made from the south corner to the corner of 16, 17, 8, and 9, you would have come nearer the corner you recognized there or the corner known as "The Hasty Corner"?

A. I measured in both directions from the corner of 4, 5, 8, and 9—both north and south.

Q. I will ask the question in a different form.    Is not the distance between the two corners at the corner of 4, 5, 8, and 9 north and south about the same as the distance between the corner you recognized to 16, 17, 8, and 9 and the Hasty corner?

A. It is not quite so much.

Q. About how much does it lack of being the same?

A. I think about a chain less.

Q. How much?

A. About a chain.

Q. The second time you were there, what were you surveying?

A. Section 9.

Q. When was that?

A. 1887.

Q. When did you survey section 8 or the southeast quarter of section 8?

A. 1888.

Q. Where did you begin at the time you surveyed that?

A. At the southeast corner.

Q. Then where did you run?

A. I ran west.

Q. How far?

A. A mile.

Q. Did you run directly a mile?

A. I closed on the quarter section corner and then ran west another half mile.

Q. Did you run on the variations given in the government field notes?

A. I did not; I ran a straight line from corner to corner.

Q. Then where did you run from the quarter corner between 8 and 17?

A. I ran west.

Q. How far—to what point?

A. To the section corner.

Q. Then you run north to the first quarter corner?

A. Yes, sir; between 7 and 8.

Q. Then east?

A. East across section 8.

Q. Did you close there?

A. Yes, sir.

Q. Then you closed at the quarter corner between 8 and 9?

A. Yes, sir.

Q. Then where did you commence?

A. I began at the quarter section corner between 8 and 17 and ran north across the section.

Q. Is that all the survey you made at that time of the lines you run?

A. Yes, sir; excepting to locate these three corners; there are three corners set for the corner of 8, 9, 16, and 17. I measured between the corners.

Q. You measured between these corners?

A. Yes, sir.

Q. Then you didn't at that time run from the quarter corner between 8 and 9 to this corner in dispute?

A. No.

Q. What part of section 8 were you surveying at that time?

A. I set the corner for the center of 8. The southeast corner was what was required.

Q. Did you attempt to found any corners there at the corner of 16, 17, 8, and 9?

A. No, sir; I found three marks and I thought I hadn't better locate any more.

Q. Which one did you recognize?

A. The south one.

Q. You didn't attempt to locate a corner there, did you?

A. I did not.

Q. Did you run south at that time from the corner in dispute a mile?

A. I did not.

Q. Were you ever at or did you ever attempt to find the corner of sections 17, 16, 20, and 21?

A. No, sir.

Mr. Worthington testifies as follows:

Well I commenced at the state line on the south side of the township at the southwest corner of section 33 and chained north clear across the township, the chaining—our chaining didn't agree exactly with the government field notes, although it was very close until we got up there to the southwest corner of section 16.

Q. How far is that south of the disputed corner?

A. One mile. From there I ran a straight line two miles north and struck the section corner.

Q. Well, what did you do then?

A. Well, I found that there were two rods over the two miles in the two sections. Then I commenced at the township line on the east side and ran west across the township; our chainings did not agree with the government field notes. I ran to the southwest corner of section 10 and then I ran a straight line two miles west through to the southwest corner of section 8. These two miles overrun six rods. I didn't chain across the township then. I went back there and divided up the distance between the southwest corner of 10 and the southwest corner of 8, and the southwest corner of 16 and 4, and put a stone in there.

Q. You may state whether you found any corner one mile south of this disputed corner.

A. Well, I could not say that it was a government corner; I found a stone set in the gound.

Q. As compared with the government field notes in distance from the Kansas line, how was it set?

A. Well, it was very close.

Q. The first mile you run from the Kansas line, how much was that?

A. I don't think I found a stone at the first mile.

Q. How was it with the second section?

A. The second section, I found a stone there, but I didn't put down the distance.

Q. Had you the field notes with you at the time you made this survey?

A. I had copies.

Q. State just how you located the corner in dispute.

A. Well, after I chained to the southwest corner of section 16 I found it did correspond very closely with the government field notes. From there I ran a straight line to the southwest corner of section 4 due north; then I put in a stake and divided that distance up equally; I divided the excess up equally between the two sections. From the county line I ran west to the southwest corner of section 10. Then I ran a straight line two miles west to the southwest corner of section 8; then I divided the distance up equally and put a stone there.

Q. That was the corner finally located?

A. Yes, sir.

Q. Did you see the Phœbus corner while you were there?

A. Yes, sir.

Q. How far is the Phœbus corner from the corner you located?

A. It is four chains and sixty-eight links south and two chains and eighty-two links west.

Q. That is the Phœbus corner?

A. Yes, sir.

Q. Do you know the corner known as the Hasty corner?

A. Yes, sir.

Q. How did that corner correspond with the corner—with your survey?

A. It was a very little west and about a rod south.

Q. Did you take either the Hasty corner or the Phœbus corner in consideration in locating that corner?

A. No, sir.

Mr. Hasty testifies:

Q. Well, you may state what you did in making the survey to locate that corner.

A. Well, I can state it as well without the plat as I can with the plat, without you want me to give the measurements.

Q. I want you to give the measurements and point them out to the jury as you testify.

A. It was ten years ago and I only have my recollection and my notes to go by. As I recollect it, I was called there to survey, and I think I commenced on the north boundary of the section first, but at the northwest corner of the section, if I recollect right, there was a government corner, but there was some dispute about it.

Q. The northwest corner of what section?

A. Section 8. I commenced at the northwest corner and ran south to the southwest corner, and I found that that corner had been obliterated and plowed up and destroyed at the southwest corner of the section. I think that in looking at my notes I found some signs, enough so I considered that I found the place where the government corner was— the right government corner was, and so I put a stone where I thought it was; then I ran the north line of the section and when I came to the northeast corner of the section—I had been told something about several corners there at the northwest corner—and when I came there I found two plain government corners apparently, and a third one that was not so plain, but some man called my attention to it and he said he thought that it looked like a government corner—I don't know who it was now—I was unable to tell which was the government corner, but it looked very much like a government corner; one of them had two pits and a trench dug on the south side of it—that is, two pits dug together. There were three corners and I was at a loss to know what to do in the matter, and I think I se-

lected one that apparently looked most like a corner and
run south from that.   A half mile south I discovered a
quarter section with a mound and two pits, and that is
what represents a quarter section.   I kept on that direction
south another half mile and came out into a plowed field;
anyhow I had been told or seen this corner.   I went the
next day, I think it was.   I went back to the southwest
corner of section 8 (I am talking about section 8 now en-
tirely).   I went back to the southwest corner of section 8
and ran east to see if I could find anything appearing like
a corner, and somewhere in the neighborhood of half a
mile I found a government corner, two pits and a mound.
I ran east from that and missed this corner.   I think the
chainmen, myself, and the flagmen were all present.   I
could not get any advice from anybody or understand any-
thing about it.   I worked until night and I didn't satisfy
myself.   I think the next day I went south.   I think I
went to the state line, but I didn't keep the minutes of it
so I could tell the time, but I went south to a plain gov-
ernment corner that no one disputed, and then I ran north
and found a corner, I think half a mile south of this dis-
puted corner, that any one could see, but they didn't seem
to know where it was.   In going up on that line from the
south I came to a corner marked ¼ S. a half a mile from
the corner south of it at a proper distance on a true line.
I made up my mind that that was a government corner,
and I proceeded to the line up there and connected it with
the line I run before, out at the same point in the plowed
field. .I then took the measurements from the two pits
north of the disputed corner at the quarter corner.   I
studied the matter over and I thought the missing corner
had been plowed up or something, and I set my corner
half way between these two corners north and south.

Q. That was half way between what corners—the quar-
ter corner north of the disputed corner and the quarter cor-
ner south of the disputed corner, and as I understand you

Woods v. West.

.the quarter corner south of the disputed was marked with
.a stone that had government marks on it?

A. It was marked ¼ S.

Q. What kind of a mark—what kind of a government
corner did you find a mile north of this disputed corner?

A. I found two pits and a mound. There should have
.been a stake, but I didn't find any stake.

Q. Then you set your corner at an equal distance be-
tween these two quarter sections?

A. Yes, sir; that is what I tried to do.

Q. I will ask you if this corner still stands there as the
Hasty corner?

A. Yes, sir; the measurements come to the same point
to-day again.

Q. Then your measurement establishing this corner was
made in '79, wasn't it?

A. It was.

Q. Now what measurements did you make the last time
you were there?

A. Simply run over these lines, part of them that I had
run before. I commenced on the state line, Kansas state line,
and I took a corner on that line and ran north past this
disputed corner across the township.

Q. How did you find the measurement from the Kansas
line out as far as one-half mile south of this disputed cor-
ner as to the distance shown by the field notes?

A. I can't recollect the figures, I would have to get that
from the chainmen. The first half mile I found to be forty-
one chains and thirty-five links, and the next half mile
was forty chains and thirty-five links, the next half mile
forty chains and twelve links, the next half mile forty
chains and twenty-five links, the next half mile forty chains
and thirty links, the next half mile forty chains and seven-
teen links, the next forty chains and twenty-six links,
which runs to the next corner south of the disputed corner.

Q. Now I will ask you if in '79, when you made this

survey, you found a government corner one mile south—or the first government section corner one mile south of the disputed corner?

A. I found what I supposed to be a government corner stone answering the description of the government field notes set in the ground that I took to be the government corner—supposed it to be. No one disputed it, at the time that I measured it, to be the disputed corner.

Q. This stone that you found half mile south of the disputed corner, is that stone there yet?

A. Yes, sir.

Q. Is it the same stone?

A. It is the same stone.

Q. In running on a general direct line with all the corners north and south on which you run a line could you strike the corner known as the Phœbus corner?

A. Not very close.

Q. On which side would it run of it—what side and about how far?

A. Most of the corners across the township would run a little east of where I set the corner.

Q. That would be still further east then than your corner is, or the Phœbus corner?

A. All the corners, I believe, but one or two, set east from that line.

Q What is the distance between the stone that is half mile south—that is, the government corner—what is the distance between that corner and the Phœbus corner?

A. Thirty-five chains and ten links.

Q. What is the distance between that stone and your corner?

A. In the survey that I made in '79 it was forty, and in the survey the other day the chainmen made it, as they returned it to me, thirty-five links over forty chains—forty chains and thirty-five links.

We thus see that there are three alleged corners at the

corner of sections 8, 9, 16, and 17—the one in dispute. That the government corner had been tampered with was apparent to any person who examined the matter. Mr. Phœbus in making his survey does not say that he sought by starting from the established corners to arrive at the correct location of the corner in dispute. He seems to have taken the word of the man who employed him as to the location of the corners, and adopted the one most favorable to him. The value of such a survey in settling the exact line between land-owners is but little. On the other hand, both Worthington and Hasty, finding that the corner in dispute had been tampered with, started from clearly defined and recognized corners and found no difficulty in following the lines, and found both the section and quarter section corners both substantially on the lines running north and south, and also on those running east and west. It will be seen from the plat that the other lines are substantially straight and cross at right angles, while, if the corner in question as located by Phœbus is correct, the corner is out of the line more than twenty·rods. This is not very probable, and the proof fails to show in a satisfactory manner the location of the government corner at that point. In addition to this the corner as fixed by Worthington and Hasty gives to both the plaintiff and defendant the full amount of land to which they are entitled under their patents, while under the Phœbus survey the defendant in error would have at least ten acres more than the patent calls for, while the plaintiff in error would be that much short. Upon the whole case it is apparent that the verdict and judgment are against the clear weight of testimony and the judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.